# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EMPIRE MEDICAL REVIEW SERVICES, INC.,**

           **Plaintiff,**

      v.                                       Case No. 13-CV-1283

**COMPUCLAIM, INC.,**

           **Defendant.**

## ORDER

Defendant CompuClaim, Inc. has filed a Motion to Compel the production of certain documents from plaintiff Empire Medical Review Services, Inc. ("EMRS"). EMRS opposes the motion on a variety of grounds, including that its position regarding the documents at issue has been known to CompuClaim for several years. Briefing on the motion is complete.

## FACTS

The court has gleaned the following facts from the parties' submissions. It does not represent a complete timeline of the communications between the parties on the issues that are at the heart of the present motion to compel. Indeed, the documents submitted make reference to other documents which have not been submitted by either

party. Nevertheless, the following facts are complete enough to enable the court to resolve the motion.

On or about August 1, 2014, EMRS responded to CompuClaim's First Set of Requests for Production of Documents. As near as the court can surmise from the parties' submissions, EMRS produced responsive documents on August 5, 2014 and on September 11, 2014. Later that year, on or about November 12, 2014, EMRS responded to CompuClaim's Second Set of Requests for Production of Documents. It appears documents responsive to the second set of requests were produced on or about November 21, 2014. It also appears that there were one or more supplemental productions of documents by EMRS, although the specific dates of those productions do not appear to be relevant for purposes of resolving the present motion to compel.

Approximately eight months later, on July 16, 2015, CompuClaim sent a letter to EMRS complaining about several of EMRS's responses to the document requests, including some that are the subject of the current motion to compel. The parties had a meet and confer conference two weeks later to address the issues in dispute. Soon thereafter, on August 17, 2015, EMRS submitted a written response to CompuClaim's letter explaining its position on the documents not produced.

Approximately nine months later, on May 17, 2016, CompuClaim sent EMRS another letter addressing several issues related to discovery. Among other things, the letter alleged that EMRS had destroyed "596 changesets" from its initial source code

production. On June 23, 2016, CompuClaim apparently sent another letter to EMRS regarding discovery-related issues, although the court was not given a copy of the letter. On July 1, 2016, the parties had another conference call to discuss discovery issues. On July 8 and on July 29, 2016, EMRS sent to CompuClaim disks containing additional software that had been requested by CompuClaim. The July 29, 2016 letter stated that the disk being produced, bates-stamped EMRS 01865, "contains a copy of the team foundation's server backup pertaining to the produced files identified above." (ECF No. 143-11.) According to EMRS's brief opposing the present motion to compel, the disk produced on July 29, 2016 contained the so-called missing 596 changesets referenced in CompuClaim's May 17, 2016 letter.

It appears that on October 7 and October 28, 2016, CompuClaim wrote EMRS letters that, among other things, continued to ask for the missing 596 changesets. These letters were not provided to the court, but they are referenced in a November 8, 2016 email from EMRS to CompuClaim stating that "a complete database with no change sets removed was produced to you over three months ago on July 29, 2016." (ECF No. 143-12.)

Sometime in early April 2017, EMRS sent to CompuClaim four declarations signed by persons who apparently are (or at least at the time were) employed by companies that were satisfied licensees of EMRS's ClearingMagic software.

On May 10, 2017, CompuClaim sent yet another letter to EMRS, again taking issue with EMRS's response to CompuClaim's document requests. That letter again raised many of the issues that are the subject of the present motion to compel. EMRS responded to CompuClaim on May 18, 2017, again explaining its position on the documents which it did not produce and which are the subject of the motion to compel. The parties met to confer about their dispute on May 26, 2017. That same day CompuClaim replied to EMRS's May 18 letter. On June 12, 2017, EMRS responded to CompuClaim's May 26 letter.

Following some additional correspondence in mid-September 2017, CompuClaim filed a motion to compel on September 29, 2017—one month before the discovery deadline set by the court back in January of this year. Briefing on the motion was not completed until after the discovery deadline.

**ANALYSIS**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party seeking relevant documents "must describe with reasonable particularity each item or category of items" being sought for production. Fed. R. Civ. P. 34(b)(1)(A). If the responding party objects and does not produce the documents sought, the requesting party may seek a court order compelling such production. Fed. R. Civ. P. 37(a). The court has broad discretion to tailor discovery narrowly and dictate its

4

sequence. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001).

In its Memorandum in Support of Motion to Compel CompuClaim identifies eight requests from its two sets of document requests that are at issue:

> Set 1, Request 37: All documents evidencing in any way notice to Empire by a third party of defects, malfunctions, problems, breakdowns or other issues with the Software.
>
> Set 1, Request 38: All documents evidencing in any way complaints about the Software, including, but not limited, documents evidencing lawsuits brought against Empire by third parties due to the Software's deficiencies, malfunctions, problems, breakdowns or other issues with the Software.
>
> Set 1, Request 41: All documents evidencing in any way requests or inquiries by a third party to Empire for Software support and/or maintenance services.
>
> Set 1, Request 47: All documents that refer to, reflect or evidence in any way HIPAA 5010 Conversion work performed by Empire for parties other than CompuClaim, including, but not limited to, invoices.
>
> Set 1, Request 48: All internal communications at Empire relating to the HIPAA 5010 Conversion work Empire allegedly performed for CompuClaim.
>
> Set 2, Request 1: Any and all software EMRS provided to CC pursuant to the Agreement, including all versions and/or iterations of the software.
>
> Set 2, Request 8: All electronically stored information ("ESI") evidencing the HIPAA 5010 Conversion work, including, without limitation, ESI that identifies when the HIPAA 5010 Conversion was performed, who performed the HIPAA 5010 Conversion Work, and when the HIPAA 5010 Conversion Work was performed.

Set 2, Request 9: All timesheets relating to the HIPAA 5010 Conversion Work, including, without limitation, those referenced in EMRS' answer to CC's Interrogatories No. 12.

(ECF No. 136 at 4.) Apparently acknowledging that EMRS has produced *some* documents in response to the above requests, CompuClaim states that the documents it is still looking for fall into five categories:

A. A new copy of the ClearingMagic Software made directly from the team foundation server;

B. Internal emails between employees of EMRS (specifically, to or from Bob Thickens, Scott Strommen, Christine Uren, or Ron Wurzer) that relate to any of the following: a) CompuClaim or its software, b) requests for ClearingMagic Software support and maintenance, c) defects, malfunctions, problems, or breakdowns or other issues with ClearingMagic Software, or d) the 5010 Conversion;

C. Timesheet or other records showing who performed what work for the 5010 Conversion work and when it was performed;

D. Correspondence between EMRS employees and EMRS customers regarding the 5010 Conversion; and

E. Documents consisting of or relating to complaints by EMRS customers about the ClearingMagic Software, including requests for support and maintenance and notice of defects, malfunctions, problems, or breakdowns or other issues with ClearingMagic.

(ECF No. 136 at 18.)

EMRS's first argument is that the motion ought to be denied because it is "highly stale." (ECF No. 142 at 26.) Essentially its position is that it responded to the document requests three years ago and has consistently ever since made its position known to CompuClaim regarding the documents in dispute. The court admonished the parties

6

during the scheduling conference back in January not to let discovery disputes fester before bringing them to the court's attention (ECF No. 125), and yet CompuClaim waited until the eve of the discovery deadline before bringing a motion about a dispute that was ripe long ago.

EMRS is correct that it staked out its position regarding the documents at issue long ago. It has since had several conversations and written communications with CompuClaim in which it has explained why, from its perspective, it has either produced the documents requested or, as to some of the requests, does not have to produce them. Its characterization of this dispute as stale is not an unfair one. And it is also true that, despite the court's admonition back in January that the parties bring any discovery disputes to the court's attention promptly after satisfying their meet and confer obligations, CompuClaim did not do that.

But stale or not, CompuClaim's motion was brought before the discovery deadline. While the court understands EMRS's frustration, EMRS has not identified any legal basis for the court to deny the motion simply because CompuClaim delayed in bringing it. Thus, the court will now turn to each of the five categories of documents identified by CompuClaim as being in dispute.

**A. A new copy of the ClearingMagic Software made directly from the team foundation server.**

Apparently under the belief when it filed its motion to compel that EMRS still had not produced a version of the ClearingMagic software containing the 596 changesets, CompuClaim first asks that EMRS be told it must produce a new (at other times it refers to it as a "fully preserved and fully operational") copy of the ClearingMagic Software containing all of the changesets. In response EMRS says it was produced long ago. And it has reminded CompuClaim at least once or twice that it has already been produced. In reply CompuClaim states that it needs more time "to determine whether the software production provides all of the information CompuClaim requested and needs." (ECF No. 151 at 10.)

Absent any reason to believe that EMRS has failed to produce the requested software (and there is no such reason), no basis exists for compelling EMRS to produce anything further as it relates to the software itself. Nor does any basis exist for holding this issue open any longer. Since it has had the disk for a year and a half, CompuClaim has had ample time to determine whether the software produced provides all of the information requested. This aspect of the motion to compel is therefore denied.

**B. Internal emails between employees of EMRS (specifically, to or from Bob Thickens, Scott Strommen, Christine Uren, or Ron Wurzer) that relate to any of the following: (a) CompuClaim or its software, (b) requests for ClearingMagic Software support and maintenance, (c) defects, malfunctions, problems, or breakdowns or other issues with ClearingMagic Software, or (d) the 5010 Conversion.**

CompuClaim states that these documents are responsive to Requests 37, 38, 41, 47 and 48 in its First Set of Requests for Production. However, it does not explain how they are relevant to any particular issue in this lawsuit or proportional to the needs of this case. Perhaps it is supposed to be self-evident.

In response, EMRS contends that CompuClaim licensed customized software from EMRS. CompuClaim's document requests defined "Software" as "the software CompuClaim licensed from Empire pursuant to the Agreement." "Agreement," in turn, was defined as having "the meaning specified in Paragraph 14 of Empire's Complaint." EMRS states that it has already produced all internal emails relating to that software. Information regarding problems other EMRS clients may have experienced running their own versions of the software has no relevance to the present dispute.

EMRS argues that, if CompuClaim's definition of "Software" is ignored, the requests are unduly burdensome and not proportional to the needs of this case. The requests would apply to every piece of EMRS software that has been licensed and include, among other things, all documents from any third party regarding any "issues" with that software.

In reply, CompuClaim disputes that its definition of "Software" is limited to the specific customized software that it licensed from EMRS. It also argues that, if the experiences of other EMRS customers with ClearingMagic Software is irrelevant, then EMRS would have no reason to rely upon (or produce) the four declarations from other customers that EMRS produced to CompuClaim. If the court does not order EMRS to produce the requested documents to the extent they deal with other customers, CompuClaim asks that the court enter an order preventing EMRS from using the declarations or similar testimony in motion practice or at trial.

EMRS has not mischaracterized CompuClaim's discovery requests. CompuClaim included specific definitions of terms that it used in its discovery requests, including that the term "Software" meant the software CompuClaim licensed from EMRS pursuant to the parties' agreement. It did not define the software generally as ClearingMagic. As a consequence, when CompuClaim demanded emails regarding problems with "the Software," the request was necessarily limited to emails regarding the CompuClaim software; emails regarding any other iteration of the ClearingMagic software that EMRS may have provided to another customer was not included.

In this portion of its motion to compel, CompuClaim seeks only emails regarding software EMRS provided to other customers; it does not argue that EMRS has failed to provide emails regarding the software EMRS provided to CompuClaim. Because emails regarding other software were not within the scope of CompuClaim's discovery

demand, EMRS was not obligated to search for and produce them and no basis exists to compel their disclosure now.

Even if the court were to ignore how CompuClaim defined "Software," CompuClaim has not explained how its requests seek information "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). None of the requests are limited as to any particular time period. To the extent the requests seek all documents relating to notice from EMRS customers about "issues" with or complaints about the software, they are not limited to the same types of issues or complaints that CompuClaim had. In short, CompuClaim has failed to show its requests would be relevant and proportional to any issue in dispute in this case.

As for CompuClaim's request that the court prevent EMRS from using declarations "or other similar testimony" from other customers in motion practice or at trial, no basis exists for such broad relief. To the extent that CompuClaim is asking the court to bar the introduction of the affidavits as a sanction for EMRS not producing emails regarding other software, such a request would be without merit. As noted, CompuClaim never demanded such emails. However, if CompuClaim believes there is some other basis to exclude this evidence (e.g., because it is irrelevant or because its use is inconsistent with a position taken by EMRS on CompuClaim's discovery requests), it can seek relief when EMRS attempts to introduce the evidence.

### C. Timesheet or other records showing who performed what work for the 5010 Conversion and when it was performed.

EMRS apparently produced timesheets for work on the ClearingMagic Software that was performed at CompuClaim's request, but *not* for work done more generally or at the request of other customers. Without records of *all* of the 5010 Conversion work performed on the ClearingMagic Software, CompuClaim contends that it cannot know whether other customers' versions of the software were somehow different in a way that allowed them to avoid the problems CompuClaim experienced with its version of the software. And as with the previous category of documents, if this information is not relevant to the parties' dispute, CompuClaim argues that EMRS should be prevented from using declarations "or other similar testimony" from other customers in motion practice or at trial.

EMRS responds by stating that CompuClaim is ignoring what it actually asked EMRS to produce in its document requests. In its requests CompuClaim defined "HIPAA 5010 Conversion Work" as "the Software customizations [EMRS] allegedly performed for CompuClaim from September 26, 2011 to December 29, 2011 for the purpose of customizing the Software so that it would submit claims in compliance with the new HIPAA Version 5010 Standards." Thus, CompuClaim's requests never sought work that EMRS might have done "more generally or at the request of other customers."

CompuClaim's reply does not (and cannot) dispute how it defined "HIPAA Conversion Work." Instead, it points out that Request 47 asks for documents relating to HIPAA 5010 Conversion Work performed by EMRS "for parties other than CompuClaim." It contends that "common sense should prevail": notwithstanding how it defined "HIPAA Conversion Work," it was clearly requesting timesheets and other records showing HIPAA Conversion Work performed by EMRS for other customers.

CompuClaim further states that, to the extent there was any ambiguity in its requests, "subsequent correspondence and discussions undoubtedly clarified what CompuClaim needed in discovery." (ECF No. 151 at 5.) But it never identifies what correspondence or which discussions supposedly clarified what it was looking for. The only correspondence the court has been able to identify that speaks to this issue is the May 26, 2017 letter from CompuClaim to EMRS. (ECF No. 137-6.) But that letter merely states that CompuClaim is still looking for "[t]ime sheets and logs that identify who performed what work and when it was performed on the HIPAA 5010 Conversion"—which does not clarify that it intended Request 47 to have a different definition of "HIPAA 5010 Conversion Work."

Request 47 on its face does seem to ask for all documents that relate to HIPAA 5010 conversion work performed by EMRS for customers other than CompuClaim. When it argues that "common sense should prevail," what CompuClaim is really saying is that the court should ignore that it attached a very specific definition to

"HIPAA 5010 Conversion Work"—namely, one which was clearly limited to the HIPAA 5010 conversion work EMRS performed for CompuClaim. As with the category immediately above, CompuClaim chose the definitions that were to guide EMRS in its search for responsive documents. Having so defined "HIPAA Conversion Work," its contention that EMRS should have understood that it did not really mean what it said is unpersuasive. It has not presented evidence that it notified EMRS before it filed its motion to compel that it intended "HIPAA 5010 Conversion Work" in Request 47 to mean anything other than as defined.

As with the category above, even if the court were to do as CompuClaim wishes and ignore the definition it attached to "HIPAA 5010 Conversion Work," CompuClaim has not explained how Request 47 seeks information "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Request 47 seeks "[a]ll documents that refer, reflect or evidence in any way" HIPAA 5010 conversion work performed by EMRS "for parties other than CompuClaim." Because the request is unlimited as to time, and the court is provided with no information as to over what period of time EMRS performed HIPAA 5010 conversion work "for parties other than CompuClaim," the request could seek documents covering days, weeks, months or years. Nor does the court have any information as to how many other parties EMRS performed HIPAA 5010 conversion work for; the number could be half a dozen or it could be hundreds or more. In short, CompuClaim does not explain

how "all documents that refer, reflect or evidence in any way" to HIPAA 5010 conversion work that EMRS performed over some unidentified (but potentially lengthy) period of time for some unidentified (but potentially large) number of other customers would be relevant and proportional to any issue in dispute in this case.

As for CompuClaim's request that the court prevent EMRS from using declarations "or other similar testimony" from other customers in motion practice or at trial, again, no basis exists for such broad relief.

This aspect of CompuClaim's motion to compel is denied.

### D. Correspondence between EMRS employees and EMRS customers regarding the 5010 Conversion.

CompuClaim contends that these documents are responsive to Request 47 and "maybe" Requests 37, 38 and 41. Among other things, CompuClaim seeks "correspondence about the 5010 Conversion process generally and work that was done for other customers on their versions of the ClearingMagic software that was not done for CompuClaim's version." (ECF No. 136 at 13.) It argues that these documents are relevant because they "will provide more background about the 5010 Conversion process, including ways CompuClaim was treated differently from other EMRS customers." (*Id.*)

EMRS's position on this category of documents is the same as the prior category. EMRS points out that Request 47 uses the defined term "HIPAA 5010 Conversion Work" that limits the request to work done for CompuClaim over a narrow period of

time. It does not cover emails about work done "generally" on the HIPAA Conversion or work done for other customers on their versions of the ClearingMagic software. Nor does CompuClaim show how Requests 37, 38 and 41 relate to this category of documents at all.

In reply, CompuClaim argues that EMRS still has not produced all internal correspondence related to the 5010 Conversion work performed on CompuClaim's behalf. EMRS disputes that contention.

After hearing oral argument on this issue, the court concludes that CompuClaim has not demonstrated that EMRS failed to produce all internal correspondence related to the 5010 Conversion work performed on CompuClaim's behalf. As to work performed generally by EMRS on the 5010 Conversion or on behalf of other EMRS customers on their versions of the ClearingMagic software, given how CompuClaim defined "HIPAA 5010 Conversion Work," such documents fall outside the scope of CompuClaim's discovery requests. This aspect of the motion to compel is, thus, also denied.

**E. Documents consisting of or relating to complaints by EMRS customers about the ClearingMagic Software, including requests for support and maintenance and notice of defects, malfunctions, problems, or breakdowns or other issues with ClearingMagic.**

CompuClaim contends that this category of documents is responsive to Requests 37, 38 and 41.

Like some of the other requests discussed above, EMRS contends that the customized software that it made for CompuClaim is not a valid comparator to software

it licensed to other customers. Thus, the documents requested are not relevant. Moreover, it argues that the requests are overbroad in seeking "all documents" ever received from a "third party" which "evidenc[e] in any way" "issues" with "the Software." The requests as worded are not limited to "issues" similar to those CompuClaim allegedly experienced.

For all of the same reasons discussed above, CompuClaim's motion to compel this category of documents is denied. "Software" was defined as the customized software licensed to CompuClaim, and those documents have been produced. To the extent the requests seek documents relating to complaints by other EMRS customers about their versions of the software, CompuClaim has not demonstrated that the requests are relevant and proportional to the needs of the case.

**IT IS THEREFORE ORDERED** that defendant's motion to compel is **denied.**

Dated at Milwaukee, Wisconsin this 8th day of December, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge