UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EMPIRE MEDICAL REVIEW SERVICES, INC.,

    Plaintiff,

  v.           Case No. 13-CV-1283

COMPUCLAIM, INC.,

    Defendant.

## DECISION AND ORDER

### Introduction

  This long-pending action is back before the court on CompuClaim, Inc.'s motion to exclude certain opinions offered by John G. Peters, an expert retained by Empire Medical Review Services, Inc. (ECF No. 159.)

  Empire "develops software that is used by healthcare providers and other entities to process or submit claims for payment of healthcare services." (ECF No. 60, ¶ 28.) "CompuClaim is a provider of healthcare electronic data interchange, billing and compliance systems that facilitate the connection between healthcare providers, state and nonprofit agencies and electronic payers." (ECF No. 63 at 9, ¶ 6.) In 2010 Empire and CompuClaim entered into an agreement regarding the use and development of

software. (ECF No. 60, ¶¶ 37-41.) Empire alleges that CompuClaim breached the agreement and unlawfully copied the relevant software. (ECF No. 60, ¶¶ 47-60.) CompuClaim alleges that the software did not perform as intended (ECF No. 63 at 12, ¶¶ 27-31), leading to "substantial harm to its business, including, but not limited to, lost sales and profits" (ECF No. 63 at 13, ¶ 39).

CompuClaim identified Frederick Orwiler, its Vice President and Director of Operations, as a hybrid fact/expert witness to support its claims of lost sales and lost profits. (ECF No. 160 at 2.) CompuClaim provided a summary of Orwiler's anticipated testimony. (ECF No. 161-3.) Empire retained Peters "to provide expert testimony analyzing and rebutting CompuClaim's damage claim (and also addressing the damages that CompuClaim's wrongful actions caused EMRS)." (ECF No. 183 at 1.) In accordance with Federal Rule of Civil Procedure 26(a)(2)(B) Peters provided a written report that set forth six opinions. (ECF No. 161-1.)

CompuClaim does not dispute Peters's qualifications but seeks to exclude the following five opinions on the basis that they are "improper, unreliable, and irrelevant":

1. Orwiler is not free from bias with respect to providing opinions on [CompuClaim's] lost profit. (ECF No. 161-1 at 4 (all pagination reflects ECF numbering).)
2. CompuClaim's assertion that nine school districts would have become customers but for the failure of Empire's software is unsupported by the evidence. (ECF No. 161-1 at 7.)
3. CompuClaim's assumption that every one of the nine school district prospects would have become a customer is unreasonable. (ECF No. 161-1 at 8.)

4. Even if the nine school districts did become customers, CompuClaim's assumption that it would have maintained all of them as customers, at the same level, for the next five years is unreasonable. (ECF No. 161-1 at 8.)
5. The problems with Empire's software did not create any "dent" in CompuClaim's business. CompuClaim's business actually increased during the period it says it was damaged. (ECF No. 161-1 at 9.)

(ECF No. 160 at 1.)

**Applicable Standards**

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   (b) the testimony is based on sufficient facts or data;
>
>   (c) the testimony is the product of reliable principles and methods; and
>
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]here are many different kinds of experts, and many different kinds of expertise." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 780 (7th Cir. 2017) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). Thus, courts must flexibly apply the principles set forth by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), on a case-by-case basis. *Gopalratnam*, 877 F.3d at 780 (citing *Krik v. Exxon*

*Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017); *C.W. v. Textron, Inc.*, 807 F.3d 827, 835 (7th Cir. 2015)).

Expert testimony must "be 'ground[ed] in the methods and procedures of science' and must 'assist the trier of fact to understand or determine a fact in issue.'" *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (quoting *Daubert*, 509 U.S. at 590-91). Under *Daubert*, the court is the evidentiary gatekeeper and must preliminarily assess the proposed expert's testimony to determine whether "the testimony's underlying reasoning or methodology is scientifically valid and properly applied to the facts at issue." *Krik*, 870 F.3d at 674 (citing *Daubert*, 509 U.S. at 592-93). In performing this gatekeeping function, the court should consider, among other factors, "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Id.* (quoting *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017)). "[E]xpert testimony that is more technical than scientific is governed by the same criteria as the admission of scientific expert testimony." *Lees v. Carthage Coll.*, 714 F.3d 516, 525 (7th Cir. 2013) (quoting *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001)). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*,

561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702 advisory committee's note (2000 Amends.)).

**Analysis**

The court concludes that Peters's challenged opinions fail to satisfy the standard set forth in Rule 702. Empire has failed to show that the challenged opinions will "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), or are a "product of reliable principles and methods," Fed. R. Evid. 702(c).

**Helpfulness**

Peters's criticism of Orwiler's conclusions is primarily evidentiary. Most of Peters's opinions (Opinions 2, 3, 4, and 5) assert largely that, based on his review of the evidence, he did not find support for Orwiler's conclusions. (*See, e.g.*, 161-1 at 7 ("I found no basis for the claim that any alleged CC problems in early 2012 had any impact or correlation with CC's possible sales to the 9 prospects."); 161-1 at 8 ("CC's lost revenue claim is speculative and unsupported because it provided no evidence for most of the 9 districts claimed that the prospect was ever really a prospect; nor did CC prove that it successfully signs all of its prospects.").

Peters also criticizes Orwiler because "Orwiler is not free from bias with respect to providing opinions on CC's lost profit." (ECF No. 161-1 at 4.) In support, he notes that, based on the documents he reviewed, Orwiler's income is tied to CompuClaim's

performance and profitability. Thus, he would stand to benefit from a large damages award. (ECF No. 161-1 at 4.)

As CompuClaim correctly observes, Peters's conclusions are essentially nothing more than the sort of summation of the evidence that an attorney would offer at the close of trial. (ECF No. 160 at 13 (quoting *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004); *see also* 4-702 Weinstein's Federal Evidence § 702.03 (2018) (citing cases) ("Proffered expert testimony should be excluded when it will not help the trier of fact to any degree beyond the assistance that the lawyers representing the parties could provide during their closing arguments.") Peters merely offers his view as to the conclusions the finder of fact should draw from the evidence.

Moreover, "it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend." *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987). A lay finder of fact is wholly capable of reviewing and assessing the evidence to determine whether a claim is supported. *See United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017); *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir. 2004) (noting that expert testimony would not assist the trier of fact when expert's testimony related only to a fact jurors could determine for themselves); *Florek v. Vill. of Mundelein*, 649 F.3d 594, 602-03 (7th Cir. 2011) ("[W]hen the testimony is about a matter of everyday experience, expert testimony is less likely to be admissible.").

6

Similarly, the assessment of bias is such a routine task for the finder of fact that it is doubtful it would ever be appropriate for an expert to opine as to the credibility of another witness. *See, e.g., Goodwin v. MTD Prods.*, 232 F.3d 600, 609 (7th Cir. 2000) ("[A]n expert cannot testify as to credibility issues. Rather, credibility questions are within the province of the trier of fact ...."); *United States v. Vest*, 116 F.3d 1179, 1185 (7th Cir. 1997) (quoting *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) ("Credibility is not a proper subject for expert testimony; the jury does not need an expert to tell it whom to believe ....").

The court presumes that Peters's knowledge and experience assisted him in his review—for example, by recognizing which documents would be most likely to contain relevant information or, more generally, in being able to understand those documents. But the fact that a person of skill and experience might be able to do a task easier or better does not mean that it is a task beyond the ken of a layperson.

**Product of Reliable Principles and Methods**

In a declaration submitted in response to CompuClaim's motion to exclude his testimony, Peters states that, in preparing his opinions, "I used procedures/methods I had been taught in college and continuing education classes, had learned in 40 years of on-the-job training, and had seen other forensic accountants use in litigation matters." (ECF No. 185, ¶ 6.) Thus, Empire argues that the opinions are admissible because they are based on Peters's accounting experience. (ECF No. 183 at 4-5.)

7

"An expert's testimony is not unreliable simply because it is founded on his experience rather than on data." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). "Rule 702 does require, however, that the expert explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.'" *Id.* (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)); *see also United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (finding inadmissible expert's opinion where "[s]he, in essence, told the jury nothing more than, 'I am familiar with the definition of child pornography, and this meets that definition because I said so.'"). "[A]n expert's opinion that lacks proper substantiation [i]s 'worthless.'" *Noel*, 581 F.3d at 497 (quoting *Minasian v. Standard Chartered Bank*, 109 F.3d 1212, 1216 (7th Cir. 1997)). "The expert must explain the methodologies and principles supporting the opinion." *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010).

Peters, at times, refers to what might appear to be principles or methodologies. For example, with respect to CompuClaim's position that each of the nine prospects identified by Orwiler would have become a customer, Peters's report states, "A proper study would involve a charting of all contacts and proposals made by CC over an historical time period with comparison to actual contracts signed to support the % of contracts attained versus proposed (i.e. batting average)." (ECF No. 161-1 at 8.) And in his declaration Peters states, "In my work under Opinion 3 (and to a large degree under

Opinion 2), I was following the methods outlined in the AICPA 'Practice Aid 10-1 Serving as an Expert Witness or Consultant'."

However, Peters does he identify any authority for his assertion as to what would be a "proper study" and the "practice aid" does not articulate a methodology for the sort of analysis Peters undertook. In fact, Peters cites the practice aid only for a generic definition of forensic accounting (ECF No. 185, ¶ 14) and for the notion that an accountant might be helpful in crafting discovery demands (ECF No. 185, ¶ 13).

There is no dispute that Peters is qualified to offer an opinion on accounting matters. But simply because he is an expert does not permit the court to admit his opinions when he failed to ground those opinions in reliable principles and methods. *See Loeffel Steel Prods. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 815 n.17 (N.D. Ill. 2005).

Accounting generally, and lost profit calculations specifically, are not matters devoid of established objective principles and methodologies such that a reliance upon an expert's amorphous experience is all there is. *See, e.g., Sys. Dev. Integration, LLC v. Comput. Scis. Corp.*, 886 F. Supp. 2d 873, 880 (N.D. Ill. 2012) (discussing method for calculating lost profits); *Victory Records, Inc. v. Virgin Records Am., Inc.*, No. 08 C 3977, 2011 U.S. Dist. LEXIS 10337, at *3 (N.D. Ill. Feb. 3, 2011) (same). To the contrary, principles and methods of accounting and auditing are well-established and formalized.

Peters's articulation of his methodology is essentially, "I did what an accountant does." That may be true, but it is not enough. If a physician were to offer his opinion as

to the cause of a party's injury (or, more analogously, his opinion that someone else's causation opinion was wrong), the physician would have to explain his methodology in more detail than, "I did what a doctor does." "Because I said so," even from a person who seems qualified to say so, is not a reliable principle or method under Rule 702. *See Noel*, 581 F.3d at 497; *see also* Minix, 597 F.3d at 835 (concluding district court acted within its discretion to exclude expert opinion because expert "cited no medical standards or principles in support of" his conclusion and, thus, "[g]iven [expert's] failure to explain his methodology, the district court could conclude that the report offered nothing of value to the judicial process" (internal quotation marks omitted)).

## Conclusion

Notwithstanding his assertions that he is "uniquely qualified to provide a trier of fact information" (ECF No. 185, ¶ 7) and that he has "substantially more experience and knowledge about the existence of and interpretation of sales forecasts than the 'common man' would have," (ECF No. 185, ¶ 9), Peters's opinions offer nothing more than what a lay finder of fact can, and must, determine on its own. In fact, if the evidence for CompuClaim's counterclaim for lost profits is as lacking as Peters suggests, surely no expertise is needed to understand that. It doesn't take an expert to recognize that evidence isn't there. Therefore, Peters's proposed testimony would not be helpful to the finder of fact.

Moreover, Peters failed to establish that his opinions are the product of any reliable principles or methodology. Although Peters is qualified to offer an opinion on accounting matters, he must still ground those opinions in reliable principles or methodology. Consequently, Empire having failed in its burden to show that Peters's opinions are admissible pursuant to Rule 702, the court must exclude Peters from offering at trial the five opinions CompuClaim challenged in its motion.

**IT IS THEREFORE ORDERED** that CompuClaim, Inc.'s motion to exclude certain proposed expert opinions of John G. Peters (ECF No. 159) is **granted**.

Dated at Milwaukee, Wisconsin this 16th day of March, 2018.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge